## IN THE OREGON TAX COURT

JOHNSON et al
*v.*

## DEPARTMENT OF REVENUE

(TC 1981 and 1983)

Donald A. Dole and Rodney Johnson, Roseburg, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered February 14, 1986.

## CARL N. BYERS, Judge.

This case concerns the true cash value of the plaintiff's sawmill plant for the years 1979 and 1982. The major components of the property in question are the buildings and equipment consisting of a sawmill, planer, dry kilns, and laminated beam plant, all located in Riddle, Oregon. The plant is located on eight acres of land in the shape of a narrow triangle. The value of the land is not in issue. The plant processes two species of wood, using fir primarily to make high grade, clear structural timbers and pine for mouldings and window casings. The sawmill was first established in 1951. It has been added to and modified over the years. The most recent major additions in 1981 were a new barker, a used dry kiln and a used planer. The total additions reported by the plaintiff between 1979 and 1982 were approximately $488,000.

■ As indicated in the interlocutory ruling previously issued in this case, plaintiff has elected under ORS 308.411(2)[1] to have the plant appraised excluding consideration of the income approach and excluding taking into consideration any functional or economic obsolesence. This election necessarily limits both the methods and the data that may be considered by the court.

Plaintiff presented two expert witnesses, one to testify as to value of the buildings and structures and the other as to the value of the machinery and equipment. Mr. Frank Price testified that he used both the cost approach and the market data approach in valuing the buildings and structures. However, he "discarded completely" the cost approach and relied solely on his market approach.

Mr. Price testified that he believed that the lack of merchantable timber is the primary reason for the numerous mill closures in Oregon. Citing declines in demand for wood products and increases in operating expenses, his appraisal

---

[1] ORS 308.411(2) reads:

"The owner of a plant may elect to have the plant appraised and valued for ad valorem tax purposes excluding the income approach to valuation and excluding taking into consideration functional and economic obsolescence in the utilization of any approach to valuation."

report concludes: "It appears that the auction price is the market price for wood products manufacturing concerns at this time." (Exhibit 5, at 22.) Mr. Price considered four sales of wood products plants, two of which were discovered after assembling his appraisal report. Believing that such sales were arm's-length market transactions, Mr. Price nevertheless recognized that (at least as to the two sales in his report) the property sold was not sufficiently similar to the subject property to be considered comparable. However, he deduced that the sales could be used indirectly by comparing the sales prices to the reproduction cost new less physical depreciation of the same sale properties. He found that this ratio for the four sales ranged from 12 percent to 29 percent. On the basis of this information and premise, he concluded that the market value of the subject property would be 25 percent of the subject property's reproduction cost new less physical depreciation.

■ The court cannot accept Mr. Price's appraisal. Regardless of the labels placed on the approach, what is being measured is the difference between reproduction cost less physical depreciation and market price. That difference represents functional and economic obsolescence. Since neither form of obsolesence may be considered in determining the value of the subject property in this appeal, the court can give no weight to Mr. Price's appraisal. ORS 308.411(5).

Plaintiff's second witness, Mr. Donald Gwyther, appraised the machinery and equipment by using the replacement cost used approach (RCU). Mr. Gwyther is experienced in both purchasing and selling machinery as well as appraising machinery. As indicated by his appraisal report, Mr. Gwyther first determined the reproduction cost new (RCN) and the asked or listed price for the same equipment in the used equipment market. In light of those two figures and based on his experience in purchasing and selling equipment, he established his own fair market value for each piece of the subject equipment. He then calculated the cost of installing the equipment, depreciated those costs and added the depreciated installation cost to his fair market value estimate of the equipment to arrive at a total value of each piece of equipment. For example, the first item in his appraisal, a three-arm light duty breakdown hoist, had a reproduction cost new of $9,000 and a used market price of $2,500. Mr. Gwyther estimated that the

subject hoist had a fair market value of $1,250. He then estimated installation costs new of $900, depreciated the installation cost to $125 and added that to his fair market value estimate of $1,250, resulting in a total fair market value for the subject hoist of $1,375.

Mr. Gwyther saw the condition of the subject plant as being from fair to poor, recognizing that some pieces were old, some were new.

It appears to the court that Mr. Gwyther's figures reflect his "auction" price point of view. For example, the new barker was added in January of 1981 at a reported cost by the owner of $245,923. (Exhibit K, at 4 of 6 for the report for year ending 12/31/81.) For the same item, Mr. Gwyther had a reproduction cost new of only $195,244 and a fair market value of $13,588. Mr. Gwyther admitted that he was "probably low on that one."

■ The court is unable to accept Mr. Gwyther's estimate of fair market value of the subject used equipment, which is without exception 50 percent less than the used market price. The 50 percent adjustment is based on Mr. Gwyther's conclusion that typical equipment in the used equipment market is in better condition than the subject property. He also indicated that used equipment prices are only "asking prices." However, the witness submitted no evidence other than his own statements "based on his experience" to support this adjustment. Likewise, the witness submitted no evidence of actual sales prices. There was contrary evidence that equipment in the used market receives less maintenance prior to its disposition and therefore was in typically poor condition.

Mr. Russell Smith, the primary appraiser for defendant, used the reproduction cost new approach (RCN) and the reproduction cost used approach (RCU). Although Mr. Smith obviously views the used equipment market and the RCU approach as unreliable, he relied primarily upon that approach. Mr. Smith indicated that Mr. Gwyther's cost figures were not far off except for the 50 percent difference between used market prices and Mr. Gwyther's estimate of fair market value. Mr. Smith also disagreed with Mr. Gwyther's "radical reductions" in installation costs. Mr. Smith did agree that the subject is below average in maintenance standards. However, he also testified that the listed or

catalog prices for the used equipment market are very close to actual sale prices.

Defendant also introduced Mr. Glenn Coxen as an expert witness as to appraisal methodology. It appears from Mr. Coxen's testimony and the testimony of the other department's witnesses that the department has a reproduction cost new fixation. The court was left with the impression that the department makes a conscious effort to avoid considering the sales of industrial plants. For example, Mr. Coxen appeared to indicate that if a plant was not operating at the time of sale, it is not considered a valid indication of value. In reality, such a sale may have more validity than the sale of an operating plant. The sale of an operating plant may include such things as goodwill, customers, contracts, management and other intangibles which are not subject to tax. The fact that the Glendale plant, one of Mr. Price's comparable sales, closed for two weeks for labor contract reasons connected with the sale is hardly a condition to disqualify that sale.

■   Likewise it appears from defendant's witnesses that if a sale plant has some equipment different than the subject, the department is reluctant to analyze or allocate values in connection with that sale. Such a standard of purity for market data is so high as to be unrealistic and can cause the department to lose the necessary perspective an appraiser must have. While the defendant treats Mr. Price's approach with disdain, Mr. Coxen testified that the department has done studies of the ratio between auction prices and assessed value. If the department can do auction ratio studies, why can't it do sale price studies? When plants like the International Paper plant at Vaughn is assessed at $12 million and sells for $2 1/2 million, certainly the assessing authorities must reconsider their premises and practices. While there may be problems of allocation in such a sale, it is far better evidence of value than some multitudinous computation of reproduction cost.[2]

■   The department appears to believe that "loss to the owner" means something other than what it would cost the

---

[2] If no other method is available, the purchase price could be allocated in the same ratio or proportion that the reproduction cost new of each part bears to the total reproduction cost new.

owner to replace his functional property. If the wood products industry is depressed in Oregon and if whole plants are selling, the sales prices of such plants would appear to be the measure of loss to the owner. Certainly the measure cannot be the income the owner earns from it, as inferred by Mr. Coxen, since that amount is unknown. Even when the amount of income is known, no one yet has devised a satisfactory means of identifying only that portion of the income attributable to the taxable property. The court recognizes that the taxpayer has somewhat hampered the valuation process by making an election under ORS 308.411(2). However, the taxing authority is still charged with the duty of using the best allowable appraisal methods to ascertain true cash value.

While the court in this case adopts the department's replacement cost used values, it does so with significant doubts as to the accuracy of the defendant's position. It is some consolation to note that the unadjusted costs shown by plaintiff's witnesses, before Mr. Price's 25 percent ratio adjustment and before Mr. Gwyther's 50 percent deduction from used market prices, are relatively close to the defendant's appraised values. However, the court believes that the department can and should do a better job with the data available to it.

Based upon the above, the court finds the true cash value of the subject property to be as follows:

|  | January 1, 1979 | January 1, 1982 |
| --- | --- | --- |
| Buildings and structures | $ 849,440 | $ 948,180 |
| Machinery and equipment | 1,036,480 | 1,699,370 |
| Total | $1,885,920 | $2,647,550 |

Costs to neither party.